## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **SHANNON B. NEALY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIV-17-592-C** |
| | ) | |
| 1. **THE CITY OF OKLAHOMA CITY,** | ) | **JURY TRIAL DEMANDED** |
| 2. **DAVID SHUPE, in his individual** | ) | **ATTORNEY LIEN CLAIMED** |
| **capacity as 911 COMMUNICATIONS** | ) | |
| **MANAGER,** | ) | |
| 3. **JAMIE O'LEARY, in her individual** | ) | |
| **capacity as ASSISTANT 911** | ) | |
| **COMMUNICATIONS MANAGER,** | ) | |
| **and** | ) | |
| 4. **WILLIAM BRYLES, in his individual** | ) | |
| **capacity as UNION PRESIDENT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Shannon B. Nealy, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.     Plaintiff, Shannon B. Nealy, is an adult Black female who resides in Oklahoma County, Oklahoma.

2.     The Defendants are:

a)     The City of Oklahoma City, a governmental entity doing business in Oklahoma County, Oklahoma (hereinafter referred to as "City");

b)     David Shupe, in his individual capacity, who at all times relevant hereto

1

was the 911 Communications Manager the City of Oklahoma City;

c)    Jamie O'Leary, in her individual capacity, who at all times relevant hereto was the Assistant 911 Communications Manager for the City of Oklahoma City; and

d)    William Bryles, in his individual capacity, who at all times relevant hereto was the Union President for the City of Oklahoma City.

## JURISDICTION AND VENUE

3.    This is a cause of action arising out of Plaintiff's employment with Defendant City and is based on claims of: (a) race discrimination and retaliation in violation of 42 U.S.C. §1981; (b) violation of Plaintiff's rights under the First Amendment of the United States Constitution; (c) retaliation for use of leave under the Family Medical Leave Act ("FMLA"); (d) negligent retention, supervision and training in violation of Oklahoma state law; (e) intentional infliction of emotional distress in violation of Oklahoma state law; (f) interference with contract in violation of Oklahoma state law; and (g) interference with prospective economic advantage in violation of Oklahoma state law.

4.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims, and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5.    All of the actions complained of herein occurred in Oklahoma County, Oklahoma.  Defendants are doing business in said county and may be served in said county.

2

Oklahoma County is located in the Western District of Oklahoma.  Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.     Plaintiff timely issued a Governmental Tort Claim Notice which was served on or about August 29, 2016.  Such notice was deemed denied on or about November 27, 2016.  This Complaint has been timely filed within 180 days of such denial.

## STATEMENT OF FACTS

7.     Plaintiff Shannon B. Nealy is a Black female who began her employment with Defendant on or about February 23, 2007 as a 911 Dispatcher Trainee in the Oklahoma City Police Department.

8.     At all times relevant hereto, Plaintiff's job performance has been at least satisfactory, if not excellent.  In fact, Plaintiff was steadily promoted over the years and currently holds the position of 911 Supervisor.

9.     In or around early 2014, Plaintiff was passed over for a promotion to Assistant 911 Communications Manager by Defendant David Shupe (who is White), 911 Communications Manager.  Defendant Jamie O'Leary (who is White), who was less qualified than Plaintiff, was selected for the position.  As a result, O'Leary became Plaintiff's immediate supervisor.

10.     In or around Fall 2014, during a personnel investigation of another employee, Plaintiff told Shupe and O'Leary that there were race issues within the department.  By way of example, Plaintiff noted that the "n" word had been written on a breakroom wall, but

3

nothing was done about it.  Shupe said there was no way to determine who wrote the "n"
word and refused to discuss Plaintiff's concerns.

11.     In or around September 2015, Plaintiff informed O'Leary and Shupe that she
had been sexually assaulted by Defendant William Bryles, Union President for the City of
Oklahoma City.  Shupe told Plaintiff to notify him and O'Leary if Plaintiff chose to file a
police report about the assault.  Thereafter, Plaintiff told Shupe she was ready to file a police
report related to the assault and, in fact, filed the same on or about September 22, 2015.

12.     On or about September 28, 2015, Plaintiff participated in a recorded telephone
call set up by the detective assigned to Plaintiff's criminal complaint against Bryles.  During
the call, Bryles made threatening comments to Plaintiff if she continued to pursue the sexual
assault charges against Bryles.

13.     Immediately thereafter, Plaintiff informed Shupe and O'Leary of Bryles'
threats.  Plaintiff further stated that she was concerned for her safety, particularly due to the
fact that Bryles had access to the building where Plaintiff worked.

14.     Despite Plaintiff's concerns, Bryles continued to be allowed to enter the
building, although it was evident that his presence was an excuse to harass Plaintiff.  For
instance, Bryles made arrangements to bring pizza for union members working in the
building which was highly unusual.  Plaintiff was also told Bryles was allowed in the
building for other meetings as well.  Bryles further harassed Plaintiff via social media.

15.     Plaintiff reported this harassing conduct to Shupe, who indicated he would do

nothing to ensure Plaintiff's safety.  In fact, Shupe stated that "life ain't for pussies" and that Bryles would be retiring soon.

16.     Due to Bryles' actions and the other Defendants' failure to address those actions, Plaintiff became increasingly stressed and anxious.  For instance, Plaintiff did not sleep for several days in a row due to her stress, anxiety, and fear that Bryles would follow through on his threats toward her, especially given that the City and individual Defendants were not taking adequate action to resolve her safety concerns.  As a result, Plaintiff requested about one week off beginning October 29, 2015.

17.     Prior to her scheduled return to work in or around early November 2015, Plaintiff was diagnosed with Post-Traumatic Stress Disorder ("PTSD") and required additional time off.  Therefore, Plaintiff notified Personnel Specialist Carla Chatman of her diagnosis, and Chatman provided FMLA forms to Plaintiff in or around mid-November 2015.  While her FMLA request was pending, Plaintiff was on provisional FMLA.

18.     Plaintiff submitted her FMLA paperwork on or about November 24, 2015, and was thereafter notified by Reed that her request was granted until on or about November 18, 2016 (one year later) for up to 480 hours.  Pursuant to her FMLA request, Plaintiff was evaluated by her therapist on a weekly basis to determine whether she could return to work, The request further indicated Plaintiff would need intermittent time off for follow up appointments upon her return to work.

19.     While on leave, Defendants continued to harass Plaintiff.  For instance, Shupe

threatened to terminate Plaintiff on or about November 18, 2015, when Plaintiff notified him that she could not attend a work meeting because she was on FMLA.  In addition, O'Leary called Plaintiff while she was off work to ask if Plaintiff was suicidal and sent police to Plaintiff's home, although Plaintiff had given no indication that she was suicidal and denied the same.

20.     Defendants Shupe and O'Leary further demanded several different doctor's notes from Plaintiff regarding her FMLA leave, leading her therapist to drop Plaintiff as a patient.

21.     Due to this continued harassment, on or about March 4, 2016, Plaintiff filed an Intake Questionnaire with the EEOC based on sexual harassment, race discrimination, hostile work environment, disability discrimination, and retaliation.

22.     Plaintiff returned to work on or about March 9, 2016.  On or about March 11, 2016, she was told by Shupe and O'Leary that she was being investigated due to an alleged complaint.  Shupe alleged that the investigation had begun back on October 1, 2015 (although March 11, 2016 was the first time Plaintiff was advised that she was under investigation).  Plaintiff was not given any details regarding the alleged complaint or who complained.  However, Plaintiff was told that "due to the alleged performance deficiencies and misconduct," she was being provided with a list of directives to follow, none of which she had been notified of previously.  For instance, Plaintiff was told that she could not leave her work building for any reason without prior approval from O'Leary and Shupe (which

6

Plaintiff had not been required to do previously).

23.     During this meeting, Plaintiff advised her supervisors that she continued to be concerned for her safety, given that Bryles continued to have access to the building.  Plaintiff further advised that a temporary Victim Protective Order ("VPO") had been entered against Bryles and was still in effect.

24.     Defendants have continually retaliated against Plaintiff.  The conduct includes accusing Plaintiff of wrongdoing which she did not commit.  For instance, on or about March 16, 2016, Shupe accused Plaintiff of not adequately communicating with her supervisors and misrepresenting their conversations.  Shupe alleged that because Plaintiff provided a release to return to work at the end of the day on March 8, 2016 and returned to work March 9, 2016, Plaintiff was not adequately communicating.   However, Plaintiff provided the release immediately upon receiving it on the afternoon of March 8, 2016.

25.     As an example of Plaintiff's alleged "misrepresentation," Shupe pointed out that the March 11, 2016 Directives Memo issued to Plaintiff was two pages, but Nealy stated in an email that it was eleven pages.  Significantly, the memo was two pages with nine pages of attachments (equaling 11 pages).

26.     Due to Defendants' continued retaliation, on or about May 25, 2016, Plaintiff notified Shupe and O'Leary that she had filed with the EEOC alleging hostile work environment, sexual harassment, disability discrimination, race/color discrimination, sex discrimination, and retaliation.

27.     On or about May 27, 2016, Plaintiff met with O'Leary related to the alleged investigation (which Plaintiff was first informed of upon her return to work in March). Although Plaintiff was told the investigation was due to employee complaints of misconduct, Plaintiff was asked multiple questions about Bryles and the VPO.  Plaintiff was given no specifics regarding the complaint, nor was she permitted to record the meeting.  Prior to the meeting, Plaintiff was further told she could not have her chosen representative present and was forced to file a grievance to ensure her representative was permitted to attend.  Upon information and belief, other employees holding positions similar to Plaintiff were allowed representatives during investigation interviews.

28.     On or about June 15, 2016, Plaintiff was placed on paid administrative leave by Deputy Chief Ken McDonald (who is White) for alleged "continuing allegations of misconduct lodged against you."  Plaintiff was required to surrender her keys and entry devices and prohibited from using city computers and software.  As a result of this administrative leave, Nealy did not receive a performance review or annual merit pay increase in or around July 2016.

29.     The alleged reasons for Defendants' retaliatory actions, including but not limited to the administrative investigation and administrative leave, are merely pretext for unlawful discrimination and retaliation.

30.     In addition, Defendants' actions are in retaliation for additional speech in which Plaintiff engaged which is protected by the First Amendment and acts consistent with

Oklahoma public policy.  In addition to Plaintiff's complaints identified above, in or around

May 2015, Plaintiff investigated the department's handling of a 911 call about a man trapped

in his vehicle during flash flooding.  The man was the father of a 911 calltaker employed

with Defendant City.  An officer was sent to the location and reported to the calltaker that

her father's vehicle had been checked and he was not in the vehicle.  However, the man's

body was ultimately found inside the vehicle.  Plaintiff prepared an initial timeline of the

incident and was asked to brief Chief Deputy McDonald regarding the incident.

31.     Thereafter, Plaintiff shared with Shupe and O'Leary her belief that the officer

had not actually checked the vehicle when he reported the man was not inside.  Plaintiff

further stated that it was concerning that the officer told the employee related to this man

(who was at work at the time) that her father was not in the vehicle (when, in fact, he had

drowned in the vehicle).   Plaintiff continued her investigation, but was then told by Shupe

that she was no longer to investigate the issue.  Plaintiff is not aware of any discipline or

resolution to this incident.

32.     Plaintiff's statements regarding the 911 calltaker's father and her stated

intention to file a complaint regarding a police officer's handling of a welfare check call, as

well as her voiced concerned about racism in the department and the filing of a police report

alleging sexual assault, were made as a private citizen on matters of public concern.

33.     On or about August 17, 2016, Bryles was charged with 4 felony counts of

embezzlement and 3 misdemeanor counts related to his alleged use of union funds for

personal expenses.  Upon information and belief, such conduct was uncovered during the investigation of Plaintiff's police report against Bryles filed in or around September 2015.

34.    On or about November 18, 2016, a hearing was held in Oklahoma County District Court regarding Plaintiff's VPO filing against Defendant Bryles.  Defendant Shupe voluntarily testified at such hearing on behalf of Bryles. Upon information and belief, Defendants Bryles and Shupe are friends outside of the workplace.  And, Bryles assisted Shupe in a campaign to become a member of the Oklahoma Retirement Board.

35.    On or about November 21, 2016, the Honorable Howard R. Haralson issued to Plaintiff a five (5) year VPO against Bryles due to his harassment of Plaintiff following her filing of a police report in or around September 2015.

36.    On or about November 27, 2016, Plaintiff applied for a promotion to Assistant 911 Communications Manager ("ACM"). Plaintiff was interviewed on or about January 30, 2017 by Major Dexter Nelson (who is Black), Captain Bo Matthews (who is White), and Public Information and Marketing Director Kristy Yager (who is White).

37.    Following the interview, Defendant City's online application system indicated Plaintiff passed the interview round with a score of 61.9%. Plaintiff then spoke with Personnel employee Kristi Hess, who told Plaintiff that the "pass" rating meant that Nealy would be moving forward in the hiring process.  However, on or about February 6, 2017, Personnel Analyst Laurie Allen (who is White) notified Plaintiff via email that Plaintiff had not been selected to proceed in the hiring process.  And, Defendant City's online application

10

system now indicates that Plaintiff failed the interview process with the same 61.9% rating. A White male was selected for the position.

38.     Upon information and belief, Defendant O'Leary was involved in the hiring decision for the Assistant 911 Communications Manager position.

39.     As of the date of this filing, Plaintiff remains on administrative leave.

40.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described below.

## COUNT I - Race - 42 U.S.C. §1981

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

41.     This Count goes against Defendants City, Shupe and O'Leary.

42      The acts described above constitute discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

43.     Plaintiff is entitled to relief because she is Black, she applied for and was qualified for the ACM position, despite being qualified she was rejected, and after she was rejected the position was filled.

44.     Plaintiff is further entitled to relief because she engaged in a protected activity by lodging a complaint of race discrimination, she suffered an adverse action (including but not limited to being denied the ACM position), and, as shown above, there is a causal link between the protected activity and the adverse action.

45.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

46.     Because the actions of the individual Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT  II - First Amendment Violation

For her second cause of action, Plaintiff incorporates all prior allegations and further allege and state as follows:

47.     This count goes against Defendants City, Shupe and O'Leary.

48.     The Individual Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to the freedom of speech.  The actions taken against Plaintiff were the result of decisions made by the Individual Defendants who had final policy-making authority and/or through an official policy or custom.

49.     The matters alleged above were in violation of Plaintiff's First Amendment right to the freedom of speech which was clearly established at the time of the actions in question.  Plaintiff's comments as stated herein constitute protected comments on matters of public concern, including but not limited to Plaintiff's filing of a police report, Plaintiff's investigation of a citizen death, and Plaintiff's intention to file a grievance against a police officer.  The actions of the Defendants were in deliberate indifference to the constitutional

rights of Plaintiff. Therefore, the Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

50.     The matters alleged above represent violations of Plaintiff's rights under the First Amendment which have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

51.     Because the actions of the Individual Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages against the Individual Defendants.

## COUNT III - FMLA

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

52.     This count goes against Defendants City, Shupe and O'Leary.

53.     The matters alleged above constitute retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family and Medical Leave Act ("FMLA").

54.     Plaintiff was entitled to medical leave because she worked for Defendant City, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to his need for leave.

55.     Plaintiff suffered from a serious health condition (i.e., PTSD) requiring continued medical treatment by a health care provider.

13

56.     Defendants retaliated against Plaintiff for her use of FMLA leave by threatening her with termination upon her request for FMLA leave, launching an investigation of Plaintiff upon her return to work from FMLA, placing her on administrative leave, and denying Plaintiff a promotion, all within close temporal proximity of her exercise of FMLA rights.  Defendants' actions were taken in response to Plaintiff's exercise of rights under the FMLA.

57.     As set forth herein, Defendants' actions were in willful violation of the law. Defendants were aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

58.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

## COUNT IV- Negligence

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and  states as follows:

59.     This Count goes only against the Defendant City.

60.     The acts of the Defendants as described above constitute the tort of negligent training, retention, and supervision.

61.     Defendant City had a duty to properly supervise and train its employees to

14

refrain from engaging in unlawful acts, including but not limited to the individual Defendants' harassment of Plaintiff, and discrimination and retaliation.

62.    Defendant City breached its duty.

63.    At the critical time of the tortious incidents described herein, Defendant City knew or should have known its employees, including but not limited to Defendants Shupe, O'Leary and Bryles, would create an undue risk of harm to others.

64.    As a direct and proximate cause of Defendant City's negligence, Plaintiff was harmed.

65.    As damages, Plaintiff is entitled to all damages allowed by state law.

## COUNT V - Intentional Infliction Emotional Distress

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and  states as follows.

66.    This Count goes only against the individual Defendants.

67.    The acts as described above constitute the tort of intentional infliction of emotional distress.

68.    Plaintiff is entitled to relief because the Defendants' conduct was intentional or reckless, the Defendants' conduct was extreme and outrageous, the Defendants' conduct caused Plaintiff to suffer emotional distress, and Plaintiff's emotional distress was severe.

69.    As damages, Plaintiff is entitled to all damages permitted by state law.

## COUNT VI - Tortious Interference

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

70.     This Count goes against the individual Defendants.

71.     The acts above-described constitute unlawful tortious interference with a contractual/employment relationship.  Defendants' actions were malicious and caused an actual harm to Plaintiff's employment relationship with Defendant City.  Defendants had no justification, excuse, or privilege for such interference.

72.     As a result, Plaintiff is entitled to all damages allowed by state law.

### COUNT VII - Interference with Prospective Economic Advantage

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

73.     This count goes against the individual Defendants.

74.     The acts above-described constitute unlawful interference with Plaintiff's prospective economic advantage.

75.     Plaintiff had a reasonable expectation for profit, i.e., annual pay increase and promotion in her employment with Defendant City.

76.     Defendants had knowledge of this relationship and/or expectancy.

77.     Defendants intentionally induced or caused a breach Plaintiff's expectancy.

78.     Such breach resulted in damage to Plaintiff.

79.     As a result, Plaintiff is entitled to all damages allowed by state law.

16

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against Defendants and assess actual, compensatory, liquidated damages, punitive damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 25TH DAY OF MAY, 2017.**

s/ Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA #22341
SHANNON C. HAUPT, OBA # 18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800        (telephone)
(405) 239-3801        (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net
haupts@leonardlaw.net
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED